IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PATRICK A. GHOSH,                      §
TDCJ #1210558,                          §
                                        §
            Plaintiff,                  §
                                        §
v.                                      §          CIVIL ACTION NO. H-05-4122
                                        §
WARDEN NORMAN McCLURE, *et al.*,        §
                                        §
            Defendants.                 §

## MEMORANDUM AND ORDER

State inmate Patrick A. Ghosh has filed this action under 42 U.S.C. § 1983, alleging violations of his civil rights.  Ghosh, who proceeds *pro se* and *in forma pauperis*, has submitted a lengthy memorandum in support of his complaint.  (Doc. # 1).  At the Court's request, Ghosh has also filed a more definite statement of his claims.  (Doc. # 10).  After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court authorized service of process for two individual defendants, who have filed a joint motion for summary judgment.  (Doc. # 45).  Ghosh has filed a response to the defendants' motion.  (Docs. # 47, # 48).  Ghosh has also filed several discovery motions, each of which are denied for reasons set forth below.  (Docs. # 44, # 46, # 49).  After considering all of the pleadings and exhibits in the record, the Court grants the motion for summary judgment and dismisses Ghosh's claims against the remaining defendants for reasons that follow.

## I.     BACKGROUND

Ghosh is currently incarcerated in the Texas Department of Criminal Justice -

Correctional Institutions Division (collectively, "TDCJ"), at the LeBlanc Unit in Beaumont, Texas. Ghosh's complaint, however, concerns the conditions of his confinement at the Luther Unit in Navasota, where he was formerly assigned in 2005.[1] Ghosh sues the following TDCJ employees who were assigned to the Luther Unit at that time: (1) Warden Norman McClure; (2) Major Leonard Ellis; (3) Captain Brian Smith; (4) Captain Kevin Mayfield; (5) FSMIV Paula Spriggs; (6) FSMIII Reneda Hubbard; (7) Counsel Substitute Joseph Weaver; and (8) Librarian II William Pendergraff. As detailed further below, Ghosh's complaint primarily concerns his work assignment at the Luther Unit and two disciplinary cases (case #20050270755 and case #2006002948) that were allegedly filed against him in retaliation for his propensity to file grievances.

While at the Luther Unit, Ghosh was assigned to work at the prison food service department where he was supervised by FSMIV Paula Spriggs (a food service manager). On January 7, 2005, Spriggs reportedly expressed concern to Ghosh over grievances that he had filed against her department. Spriggs sent Ghosh to see Captain Kevin Mayfield, who reportedly threatened Ghosh with disciplinary charges for engaging in trafficking and trading in contraband from the kitchen commissary. Construing Captain Mayfield's remarks as official oppression in violation of TDCJ policy and Texas law, Ghosh filed a "criminal complaint" against Mayfield with county authorities. Ghosh also complained to Warden

---

[1]     When Ghosh filed the complaint in this case, which is dated November 25, 2005, he was incarcerated at the Luther Unit. (Doc. # 1). Sometime thereafter, on or about March 10, 2006, Ghosh was transferred to the Hughes Unit. (Doc. # 12). Recently, in November 2006, Ghosh advised the Court of his transfer to the LeBlanc Unit. (Doc. # 50).

Norman McClure.

Shortly after the incident with Captain Mayfield, Ghosh was approved by the State Classification Committee for placement at the prison trusty camp where he was assigned to work as a "kitchen helper" under the supervision of another food service manager, FSMIII Reneda Hubbard. Specifically, Ghosh was assigned to wash pots and pans. Ghosh alleges that Hubbard did not provide proper training to inmate kitchen workers on how to use bleach for sanitizing pots and pans used to prepare food. When Ghosh complained to her, Ghosh claims that Hubbard tried to get Ghosh's job assignment changed from the kitchen so that she would not have to resolve any potential health code violations.

In March of 2005, Ghosh reportedly submitted an I-60 official request form asking for a job change from his role as a kitchen helper. According to Ghosh, Warden McClure approved his request for a job change and assigned him to work instead as a "can crusher." Ghosh claims that he received an "official job change slip" on April 6, 2005. He complains, however, that the job change was "reversed" on April 7, 2005, sending him back to the food service department supervised by Hubbard. Ghosh contends that Major Ellis was responsible for reversing his job change, but that Major Ellis had no authority to make that decision. Ghosh surmises that retaliation must have been the reason for Major Ellis to undertake this unauthorized act.

Ghosh was not pleased to return to the trusty camp food service department. On April 8, 2005, Hubbard issued a disciplinary case against Ghosh for refusing to turn out for work

at his kitchen job in violation of prison rules.[2]  As a result of the disciplinary offense, Ghosh was removed from the trusty camp and sent back to the prison's "main building."  A short time later, Ghosh returned to the trusty camp where he was assigned to work in the kitchen as a "stock clerk" in charge of taking inventory and stocking "cold storage" items.  Ghosh relates, however, that problems arose once again after Hubbard began asking him to do additional work washing pots and pans on top of his assigned duties as a stock clerk.

Unhappy with the extra demands, Ghosh reportedly complained to Spriggs on May 13, 2005, because he felt that Hubbard was assigning him more work than he was required to perform.  Ghosh alleges that Spriggs spoke to Hubbard about Ghosh's complaint and that Hubbard subsequently began to retaliate against him by ordering him to "wash out slop cans on the back dock," which was not part of his job description and which reportedly violated unspecified "medical restrictions."  When Ghosh refused to wash out the cans as ordered, Hubbard reportedly "became angry and told [him] to go to [his] dorm."  Hubbard then filed a disciplinary action against Ghosh (case #20050270755) for failing to obey a direct order to perform work and for lying to a staff member about his medical restrictions.

During the ensuing disciplinary proceeding, Joseph Weaver was appointed as a counsel substitute to help Ghosh with the charges lodged against him in case #20050270755.  Ghosh complains that Weaver was "very rude" to him during the course of preparing for the disciplinary hearing and that Weaver tried to "intimidate" Ghosh into giving a statement and

---

[2]  Ghosh does not provide any details about whether he was convicted of these disciplinary charges and he does not otherwise challenge this particular disciplinary action.

4

providing a list of witnesses.  Ghosh refused. The disciplinary hearing occurred on June 14, 2005, with Captain Brian Smith presiding.  Ghosh was "cleared" of the charge accusing him of lying to a staff member, but convicted of disobeying an order.  As punishment, Ghosh's commissary and recreational privileges were curtailed for thirty days and he was demoted in class status from S-2 to S-4.

During his appeal of the disciplinary conviction for disobeying an order, Ghosh complained that he was not given an opportunity to call three witnesses on his behalf. Thereafter, the conviction in case #20050270755 was overturned and remanded to the disciplinary hearing officer (Captain Smith) for re-hearing.  Although the conviction was overturned, Ghosh reports that Warden McClure refused to reinstate his classification status to S-2.  Ghosh complained about Warden McClure to the TDCJ Office of the Ombudsman.

In an unrelated set of events, Ghosh states that he wrote two letters to the Director of TDCJ's Access to Courts program, Frank Hoke.  One of those letters reportedly complained that the law library supervisor at the Luther Unit, William Pendergraff, was closing the library at 4:30 p.m., instead of the usual time of 6:00 p.m., whenever there was no security officer available.  As a result of this complaint, Ghosh claims that Pendergraff retaliated against him on September 16, 2005, by causing another officer to issue a disciplinary action against Ghosh (case #20060022948) for being "out of place."  Ghosh was eventually convicted of those charges.  As punishment, Ghosh was verbally reprimanded and he lost his commissary and recreational privileges for ten days.

In his current complaint and more definite statement, Ghosh maintains that the

5

defendants have violated his constitutional rights.  In summary, Ghosh accuses Major Ellis of retaliation and interference with his job assignment without authorization. Ghosh claims further that Warden McClure, who could have authorized the job change, "aggravated the situation with dishonesty and not taking charge when he could have."  Ghosh complains in general that Warden McClure, Major Ellis, Captain Mayfield, Paula Spriggs, Reneda Hubbard, and William Pendergraff formed a conspiracy to retaliate against him.  In particular, Ghosh claims that Hubbard and Pendergraff retaliated against him because of his grievance-filing and letter-writing activities by lodging "false" disciplinary charges against him in case #20050270755 and case #20060022948.  Ghosh adds that he was denied due process in case #20050270755, and that Captain Smith and Weaver were responsible for violating his constitutional rights during that proceeding.  Ghosh seeks compensatory and punitive damages for the alleged violations of his constitutional rights.

After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court authorized service of process for Hubbard and Pendergraff.  These defendants have filed a motion for summary judgment, arguing that Ghosh's allegations of retaliation fail to state a claim as a matter of law.  Alternatively, the defendants argue that they are entitled to qualified immunity.  Ghosh disagrees.  After considering all of the claims and contentions, the Court concludes that Hubbard and Pendergraff are entitled to summary judgment and that Ghosh's claims against the remaining defendants fail as well for reasons discussed further below under the appropriate standards of review.

II.    **STANDARDS OF REVIEW**

A.    **The Prison Litigation Reform Act**

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

In conducting the foregoing analysis, a prisoner's *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them.  *See Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir.

1983).  "A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP

if it lacks an arguable basis in law or fact."  *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir.

2005).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless

legal theory, such as if the complaint alleges the violation of a legal interest which clearly

does not exist."  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  A review for failure

to state a claim is governed by the same standard used to review a dismissal pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  *See Newsome v. EEOC*, 301 F.3d 227, 231

(5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)),

*cert. denied*, 537 U.S. 1049 (2002).  Under that standard, courts must assume that the

plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no

relief could be granted under any set of facts that could be proven consistent with the

allegations. *See id*. (citations omitted).

    **B.**    **Summary Judgment**

    Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986).  The moving party bears the burden to show that "there is an absence

of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party.  *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

As noted previously, the plaintiff proceeds *pro se* in this case.  Although the plaintiff does not have the benefit of counsel, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding

summary judgment.").

## III.   **DISCUSSION**

For reasons that follow, the claims against Warden McClure, Captain Mayfield, Paula Spriggs, and Counsel Substitute Weaver must be dismissed because Ghosh concedes that he did not exhaust his administrative remedies with respect to the allegations made against these defendants.  Likewise, exhibits attached to the complaint show that Ghosh did not file a grievance about any alleged retaliation by Major Ellis and that this claim is therefore unexhausted as well.  Ghosh's remaining claims involve allegations that Major Ellis changed his job assignment without authorization, that Captain Smith violated his right to due process in connection with disciplinary case #20050270755, and that Hubbard and Pendergraff retaliated against him by filing "false" disciplinary cases.  These claims are analyzed more fully below, following a discussion about the exhaustion requirement.

### A.     **Exhaustion**

The PLRA prohibits any action by a prisoner in federal court under 42 U.S.C. § 1983 concerning "prison conditions" until "such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has repeatedly emphasized that § 1997e(a) mandates exhaustion of *all* administrative procedures before an inmate can file any suit challenging prison conditions.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Woodford v. Ngo*, — U.S. —, 126 S. Ct. 2378, 2382-83 (2006); *see also Jones v. Bock*, — U.S. —, 2007 WL 135890, * 8 (Jan. 22, 2007) (Nos. 05-7058 & 05-7142) (confirming that "[t]here is no question that exhaustion is

10

mandatory under the PLRA and that unexhausted claims cannot be brought in court"). Consistent with this Supreme Court precedent, the Fifth Circuit has also mandated that a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

The plaintiff is incarcerated in TDCJ, which has a formal two-step administrative grievance process. *See Johnson*, 385 F.3d at 515; *see also Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). It is settled that a TDCJ inmate must complete both steps of the grievance process for his claim to be considered exhausted. *See Johnson*, 385 F.3d at 515 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

### 1.    Claims Against Warden McClure, Captain Mayfield, Paula Spriggs, and Counsel Substitute Weaver

Ghosh concedes in his more definite statement that he did not file any formal grievance to complain about the actions allegedly taken by Warden McClure, Captain Mayfield, Paula Spriggs, or Counsel Substitute Weaver.[3] (Doc. # 10, *More Definite*

---

[3]    The Supreme Court has recently clarified that exhaustion is an affirmative defense, which a prisoner is not required to plead or prove in his complaint. *See Jones*, — S. Ct. at —, 2007 WL 135890, * 11. Nothing in the Supreme Court's decision in *Jones* precludes a reviewing court from raising the issue of exhaustion *sua sponte* or dismissing the complaint without service on the defendants where the pleadings and the record confirm that a prisoner has violated 42 U.S.C. § 1997e(a) by failing to exhaust his remedies before filing suit. In this instance, the plaintiff provided copies of several grievances with his complaint. (Doc. # 1). In addition, during the screening process mandated by 28 U.S.C. § 1915A, the Court
(continued...)

*Statement*, at 4, 8, 9, 12).   The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," which demands compliance with prison procedural rules.   *Ngo*, — U.S. —, 126 S. Ct. at 2387. Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules.   *See id.*, 126 S. Ct. at 2389-90.   By not even attempting to file a formal grievance concerning the complained of conduct attributable to these defendants, Ghosh clearly failed to exhaust the requisite administrative remedies prior to filing this suit.   Because Ghosh concedes that he failed to properly exhaust available administrative remedies before filing suit in federal court, his claims against Warden McClure, Captain Mayfield, Paula Spriggs, and Counsel Substitute Weaver must be dismissed.   *See Jones*, — S. Ct. at —, 2007 WL 135890, *13 (stating that, where a complaint contains both exhausted and unexhausted claims, a reviewing court should dismiss the "bad" claims and proceed with the "good" ones).

### 2.   Retaliation Claim Against Major Ellis

In addition, Ghosh complains in this case that Major Ellis changed his job without authorization in "retaliation" for his past complaints or grievances.   (Doc. # 10, *More Definite Statement*, at 5).   Although Ghosh did file a set of grievances against Major Ellis, a review of those grievances, which are attached to the complaint, shows that Ghosh did not

---

[3](...continued)
        specifically asked the plaintiff in its Order for More Definite Statement to clarify whether he had met the exhaustion requirement.   (Doc. # 6).   The Court's review of the exhaustion requirement, therefore, is based on pleadings and a record that has included factual development regarding this specific issue.

complain about any alleged reprisal on Major Ellis's part in connection with the job change at issue.  (Doc. # 1, *Complaint*, Exhibits - Step 1 & Step 2 Grievances #2005156290).  While an inmate is not required to present legal theories in his grievances, he is required to articulate facts that are sufficient alert officials to a problem and give them an opportunity to address it.  *See Johnson v. Johnson*, 385 F.3d 503, 517-18 (5th Cir. 2004).  The level of specificity required in a grievance should be interpreted in light of the grievance rules of the particular prison system.  *See id.* at 517; *see also Jones*, — S. Ct. at —, 2007 WL 135890, *12.

The TDCJ Offender Orientation Handbook contains specific grievance procedures for offenders.  *TDCJ Offender Orientation Handbook* ¶ VI (Nov. 2004), available at [www.tdcj.state.tx.us](www.tdcj.state.tx.us) (last visited Jan. 22, 2006).  In addition to providing detailed procedures, the Handbook lists several issues that are considered "grievable."  *See id.* at ¶ VI(F).  Included among those issues are "[a]ny reprisal for submitting [a] grievance or exercising other Access to Courts rights."  *Id.*  The Step 1 grievance form used by TDCJ also requests pertinent information about the inmate's complaint, asking him to provide details such as "who, what, when, [and] where" the complained of incident occurred.

A review of the Step 1 and Step 2 grievances filed by Ghosh against Major Ellis show that Ghosh complained only of a job change that was made without authorization in violation of prison policy. (Doc. # 1, *Complaint*, Exhibits - Step 1 & Step 2 Grievances #2005156290).  The grievances filed by Ghosh do not accuse Major Ellis of making the job change for any improper motive;  nor does he allege facts suggesting that the complained of job change was

13

the result of a reprisal or the product of retaliatory animus.  Because retaliation is among one of the issues specifically contemplated by the offender grievance procedure, Ghosh was required to allege details in support of such a claim. This failure to do so results in lack of exhaustion of this claim.  Therefore, Ghosh's retaliation claim against Major Ellis must be dismissed for failure to exhaust administrative remedies.[4]  *See Jones*, — S. Ct. at —, 2007 WL 135890, *13.  Ghosh's claim that Major Ellis interfered with his job assignment in violation of prison rules is exhausted and is considered below.

**B.      Unauthorized Job Change by Major Ellis**

Ghosh complains that Major Ellis violated his constitutional rights by changing his job assignment without authorization.  Ghosh explains that he was interviewed by Sergeant Nepereny on March 28, 2005, about his request for a job change.  (Doc. # 10, *More Definite Statement*, at 5).  On March 31, 2005, Sergeant Zwahr informed Ghosh that his job

---

[4]      Even if Ghosh had exhausted a retaliation claim against Major Ellis, Ghosh fails to state a valid claim.  Ghosh alleges that Major Ellis retaliated against him in violation of his constitutional rights by changing his job assignment as a can crusher without authorization.  (Doc. # 10, *More Definite Statement*, at 5).  Ghosh contends that only Warden McClure could authorize the change in job assignments and reasons, therefore, that retaliation must have been the reason that Major Ellis reversed the job change.  (*Id.*).  Ghosh's personal belief that retaliation must have been the reason for the adverse action is insufficient to state a valid claim under 42 U.S.C. § 1983.  *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).  Likewise, the Fifth Circuit has held that allegations of a retaliatory job transfer, such as the claim made by Ghosh, do not rise to the level of a constitutional violation because the adverse action at issue is *de minimis*.  *See Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006).  In that regard, the job change at issue here did not involve working conditions that were clearly less desirable or that otherwise posed an extreme hardship to the inmate.  *See id.* at 688; *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) (involving an alleged retaliatory transfer from a job involving light labor to a much less desirable job subjecting the prisoner to extreme hardship).  Accordingly, even if Ghosh were deemed to have exhausted a retaliation claim against Major Ellis, his complaint has no merit.

14

assignment would be changed from the food service department.  (*Id.*).  On April 6, 2005, Ghosh was given an "official job change slip" and assigned to work as a can crusher.  (*Id.*). To Ghosh's dismay, the job change was "reversed" the next day.  According to Ghosh, Sergeant Nepereny told him that Major Ellis was responsible for keeping him assigned to the kitchen.  (*Id.*).  Ghosh contends that, according to TDCJ policy, only Warden McClure could authorize the change in job assignments.  Ghosh argues, therefore, that Major Ellis violated his constitutional rights when he changed Ghosh's job assignment on April 7, 2005, in violation of TDCJ rules.

Ghosh's allegation about the unauthorized change in job assignment does not state a constitutional violation.  Prisoners have no constitutionally protected liberty or property interest in prison job assignments.  *See Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (citing *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989)).  There is no constitutional right to a particular job while in prison.  *See id*. (citing *Flittie v. Solem*, 827 F.2d 276, 279 (8th Cir. 1987)).  Accordingly, Ghosh had no constitutional right to a specific job.

To the extent that Ghosh claims that Major Ellis made changes to his job assignment without authorization, this states, at most, a violation of prison policy or regulations.  Any failure by prison officials to comply with their own policies and procedures does not, standing alone, demonstrate a constitutional violation.  *See Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) (noting that a state's failure to follow its own rules or regulations, alone, does not establish a constitutional violation); *Hernandez v. Estelle*, 788 F.2d 1154,

1158 (5th Cir. 1986) (per curiam) (rejecting an inmate's claim that TDCJ-ID's mere failure to follow an administrative rule violated his constitutional rights).  Because Ghosh had no constitutional right to a particular prison job, Ghosh's allegation that Major Ellis failed to follow prison rules with respect to his job assignment lacks an arguable basis in law for purposes of a civil rights suit under 42 U.S.C. § 1983.  Accordingly, this allegation is subject to dismissal for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B).

### C.   Due Process Claims Against Captain Smith

Ghosh complains that Captain Smith violated his right to due process in connection with disciplinary case #20050270755.  (Doc. # 10, *More Definite Statement*, at 6-7).  In addition to other improprieties, Ghosh alleges that Captain Smith "stated 9 times on record that he was going to make sure that my witnesses would be called" at the hearing, but that he failed to call them.  (*Id.* at 6).  Ghosh complains, therefore, that he was convicted of a disciplinary infraction in case #20050270755 in violation of his due process right to call witnesses. (*Id.* at 6-7).

In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See Wolff v. McDonnell*, 418 U.S. 539 (1974).  Prisoners charged with institutional rules violations, however, are entitled to rights under the Due Process Clause *only* when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest.  *See Sandin v. Conner*, 515 U.S. 472 (1995).  Such an interest is "generally limited

to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations omitted).  Therefore, the question is whether the sanctions imposed at the disciplinary proceeding implicate a liberty interest of the sort protected by the Due Process Clause.

In Texas, only those disciplinary sanctions resulting in the loss of good-time credits by inmates eligible for release on mandatory supervision or otherwise directly and adversely affecting release on mandatory supervision will result in an imposition upon a protected liberty interest.  *See Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000).  Ghosh concedes that he did not lose any good-time credits as a result of the prison disciplinary proceeding at issue.  (Doc. # 10, *More Definite Statement*, at 7).  Rather, his punishment consisted of a thirty-day restriction on commissary and recreational privileges, as well as a reduction in class status from S-2 to S-4.  (*Id.*).  Restrictions on commissary or recreational privileges are the type of sanction that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life.  *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).  The Fifth Circuit has also decided that a reduction in a prisoner's class status and its potential impact on good-time credit earning ability are not protected by the Due Process Clause.  *See Malchi*, 211 F.3d at 958; *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996).  Thus, the sanctions imposed against Ghosh in case #20050270755 do not implicate the Due Process Clause.

Alternatively, Ghosh concedes that the conviction against him in case #20050270755 was overturned on appeal.  (Doc. # 10, *More Definite Statement*, at 7).  A grievance attached to the complaint reflects that the conviction was overturned for procedural reasons at the unit level and remanded for rehearing at the unit's option.  (Doc. # 1, *Complaint*, Exhibit - Step 1 Grievance #2005181300 (dated June 24, 2005)).  The pleadings filed by Ghosh indicate that no further disciplinary proceedings were pursued in this matter.[5]  Under these circumstances, Ghosh fails to demonstrate a violation of the Due Process Clause or to state a valid claim upon which relief can be granted against Captain Smith.[6]  Accordingly, this claim is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

### D.    Retaliation Claims Against Hubbard and Pendergraff

Ghosh contends that he was retaliated against by Hubbard and Pendergraff as the result of his grievance-filing practices.  In particular, Ghosh complains that Hubbard and

---

[5]    Ghosh, whose class status was reduced from S-2 to S-4 following his conviction in case #20050270755, has complained in this case that the prison classification committee refused to reinstate his former S-2 class status after the conviction was overturned. (Doc. # 10, *More Definite Statement*, at 7).  The administrative response to Ghosh's grievance about his status explains that, at the time the conviction was overturned, Ghosh's classification had already increased from S-4 to S-3. (Doc. # 1, *Complaint*, Exhibit - Step 2 Grievance #2005181300, dated August 3, 2005).  The administrative response explains further that Ghosh's classification was not reinstated to S-2 because, apart from the disciplinary conviction that was overturned, he had two other minor disciplinary cases at that time. (*See id.*).  Thus, the record does not support Ghosh's claim that officials failed or refused to reinstate his class status after his disciplinary conviction in case #20050270755 was overturned.

[6]    Ghosh also alleged that Counsel Substitute Weaver violated his right to due process in connection with disciplinary case #20050270755. As discussed above, however, Ghosh failed to exhaust his administrative remedies with respect to such a claim. The Court notes that any due process claim against Weaver fails for the same reason as the claim against Captain Smith.

Pendergraff retaliated against him by filing false disciplinary cases against him.  At the Court's request, the defendants have filed an answer and they now move for summary judgment on this issue, arguing that Ghosh fails to demonstrate a valid claim for retaliation as a matter of law.[7]

Claims of retaliation generally flow from protections provided by the First Amendment.  A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998), or for complaining through proper channels about a guard's misconduct.  *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995)).  The Fifth Circuit has cautioned, nevertheless, that claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions.  *See Woods*, 60 F.3d 1166.  To prevail on a claim of retaliation a prisoner must establish the following elements: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *See Morris*, 449 F.3d at 684; *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated,

---

[7]     Ghosh alleges in his complaint and more definite statement that one or more of the defendants have formed a conspired to retaliate against him.  It is not clear the Ghosh attempts to make a separate claim of conspiracy.  Absent reference to material facts, Ghosh's conclusory allegations of conspiracy are not sufficient to articulate a claim of federal conspiracy under 42 U.S.C. § 1983.  *See Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)).  Because his conclusory allegations fail to state a claim, the Court does not address this issue further.

then the claim will fail as a matter of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), *cert. denied*, 522 U.S. 995 (1997). To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *See Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166.

In addition, as the Fifth Circuit has recently clarified, the complained of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *See Morris*, 449 F.3d at 684-85 ("[O]ur precedent is consistent with the proposition that an inmate must allege more than *de minimis* retaliation to proceed with such a claim."); *see also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (holding that disciplinary sanctions in the form of twenty-seven days of commissary and cell restrictions did not qualify as *de minimis* for purposes of a retaliation claim). The purpose of allowing inmate retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523

20

U.S. 574, 588 n. 10 (1998)).  Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686.  *De minimis* acts that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.  *Morris*, 449 F.3d at 686.  Ghosh's retaliation claims against Hubbard and Pendergraff are examined separately below under this standard.

### 1.    Hubbard

Ghosh complains that Hubbard, a food service manager, retaliated against him for filing grievances.  (Doc. # 10, *More Definite Statement*, at 9).  In particular, Ghosh alleges that Hubbard retaliated against him for his grievance-writing activities by filing a false disciplinary case against him on May 31, 2005.  (*Id.*).  Specifically, Ghosh contends that retaliation was the reason that Hubbard filed disciplinary charges against him in case #20050270755 on May 31, 2005, which accused him of disobeying a direct order, and lying to a staff member.  (*Id.* at 9-10).

### a.    Intent

Hubbard argues that Ghosh cannot demonstrate retaliatory intent because there is no evidence that, prior to filing disciplinary case #20050270755, Ghosh had filed any grievances against her.  The summary judgment record confirms that Ghosh did not file a formal Step 1 administrative grievance against Hubbard prior to the disciplinary action filed against him in case #20050270755.  Ghosh alleges, however, that Hubbard knew he had complained about her to another food service manager (Paula Spriggs) and that the alleged

retaliatory action occurred after Hubbard was confronted with this informal complaint. Hubbard does not brief this issue further and she provides no additional information (such as an affidavit) regarding her intent.  Viewed in the light most favorable to Ghosh, as the non-movant, Hubbard's argument on this issue is insufficient to demonstrate that summary judgment is appropriate.

### b.    Causation

Turning to the element of causation Hubbard contends further that Ghosh fails to show that, but for any improper retaliatory animus, the disciplinary charges would not have been filed.  According to the disciplinary hearing records, Ghosh was charged with refusing to obey a direct order to wash trash cans in his department and he was further charged with lying to a staff member by stating that he had a medical restriction that prohibited him from performing the task as directed.  (Doc. # 45, *Motion for Summary Judgment*, Exhibit A, TDCJ Disciplinary Report and Hearing Record).  The Offense Report compiled by Hubbard reflects that she ordered Ghosh to clean the food service department trash cans and he refused.  (*See id*., Offense Report).  According to Hubbard's account, Ghosh reportedly stated that he had medical restrictions and that he was not supposed to turn out for work. (*See id*.).  Hubbard contacted a nurse, who stated that Ghosh had no work restrictions.  (*See id*.).  Hubbard then reportedly contacted another nurse, who confirmed that Ghosh had no restrictions that precluded him from turning out for work.  (*See id*.).  Based on this information, Hubbard issued the disciplinary charges for refusing a direct order and for lying to a staff member about his medical restrictions.  Because the charges were approved by a

supervisor and the warden, Hubbard insists that Ghosh fails to demonstrate that her actions were unreasonable under the circumstances or that but for any retaliatory animus the disciplinary case would not have issued.

Because the existence of causation depends on the presence of illicit motive, a prisoner's claim that an official has retaliated against him by filing a false disciplinary case against him is not unlike a claim of malicious prosecution. With respect to this issue the Supreme Court has stated that, where prosecution is allegedly lodged in retaliation for engaging in an activity protected by the First Amendment, the plaintiff must plead and prove a lack of probable cause. *See Hartman v. Moore*, — U.S. —, 126 S. Ct. 1695, 1707 (2006). As the Supreme Court explained, requiring a plaintiff to demonstrate that there was no probable cause for the underlying charge "will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Id.* at 1704. Thus, to prove the requisite causation in that situation, the plaintiff must show that the official who instigated the charges "acted in retaliation, and he must also show that he induced the prosecutor to bring charges that would not have been initiated without his urging." *Id.* at 1705.

The Offense Report in this case shows that the disciplinary charges lodged by Hubbard in case #20050270755 were approved by a supervisor (Lieutenant Zwahr) and Warden McClure. (Doc. # 45, *Motion for Summary Judgment*, Exhibit A, Offense Report). The charges were also evaluated at a disciplinary hearing before a neutral officer. Ghosh

does not deny refusing to perform the work as directed; rather, he appears to argue that his refusal was excused because of medical restrictions that Hubbard was unable to substantiate or confirm.  Ghosh does not show that the disciplinary charges were unwarranted under the circumstances outlined in the Offense Report as they reasonably appeared to Hubbard at the time she initiated the charges.  Although Ghosh was acquitted of lying to a staff member and his conviction for disobeying an order was eventually overturned, Ghosh fails to show that Hubbard acted without cause to believe he had committed a disciplinary offense.  Ghosh therefore fails to raise a genuine issue of material fact about whether, but for a retaliatory motive, the disciplinary charges would not have been filed.

### c.   Adverse Action

The fact that Ghosh's disciplinary conviction was overturned in case #20050270755 raises another issue.  Even if the charges were filed in retaliation, Ghosh cannot establish that he suffered any adverse action as a result of the disciplinary charges filed by Hubbard.  As Ghosh concedes, he was acquitted of lying to a staff member and his conviction for disobeying an order in case #20050270755 was later overturned on appeal.  Thus, Ghosh cannot show that he was convicted of a false disciplinary case as the result of charges filed by Hubbard.  Ghosh does not dispute that his disciplinary conviction was overturned and he does not otherwise show that he suffered an adverse action as the result of the charges issued by Hubbard.

Based on the foregoing, Ghosh has failed to demonstrate or otherwise raise a genuine issue of material fact on the issue of causation.  Nor does the record support a showing that

Ghosh actually suffered an adverse action as the result of the charges.  Because Ghosh has failed to establish a valid retaliation claim, Hubbard is entitled to summary judgment on the allegations against her.

### 2.    Pendergraff

Ghosh complains that Pendergraff, the Luther Unit law library supervisor, retaliated against him for writing letters to the Director of the Access to Courts program.  (Doc. # 10, *More Definite Statement*, at 12).  Ghosh explains that he wrote two letters to Access to Courts Director Frank Hoke.  In one, Ghosh reportedly lodged an unspecified complaint about a correctional officer (Officer Copeland) who had been placed in charge of the law library one Saturday morning. (*Id.*).  In the other letter, Ghosh complained that Pendergraff tended to close the library at 4:30 p.m., whenever a security officer was not available, "so that he could leave early without ever giving the inmates advance notice." (*Id.*).  As a result of this letter, Ghosh claims that Pendergraff instructed another officer (Officer Wade or Officer Larsen) to file a false disciplinary charge against him on September 16, 2005, in case #20060022948, which accused Ghosh of being "out of place" in violation of prison rules. (*Id.*).

### a.    Intent

Pendergraff maintains that Ghosh cannot demonstrate retaliatory intent because there is no evidence that any letters were received by Director Hoke or that, if there were such letters, Pendergraff had any knowledge of the letters' contents.  Ghosh has provided numerous documents in this case, but no copies of any letter to Director Hoke.  Ghosh does

not allege or show that he ever filed an administrative grievance against Pendergraff prior to his disciplinary conviction in case #20060022948.  Likewise, Ghosh does not allege facts showing that Pendergraff had any other reason to know about his letter to Director Hoke.

Based on this record, Ghosh does not demonstrate that Pendergraff knew that he had sent the letter to Director Hoke prior to the time the disciplinary case was filed on September 16, 2005.  There is no direct evidence of retaliation, and the allegations do not establish a chronology from which retaliation may plausibly be inferred.  *See Woods*, 60 F.3d at 1166. Absent an allegation showing that Pendergraff had been the target of one of Ghosh's grievances, or that he knew of Ghosh's propensity for filing grievances, there is no causal link to connect the disciplinary charge with the exercise of a constitutional right.  *See McDonald*, 132 F.3d at 231 (finding no evidence of retaliatory intent).  Ghosh has not demonstrated that Pendergraff formed the requisite retaliatory intent.  *See id.; cf. Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (noting the "direct link" between the prisoner's complaints about an officer, and the alleged retaliatory adverse act by that officer). Accordingly, Ghosh fails to raise a genuine issue of material fact on this issue.

### b.    Causation

Pendergraff argues further that Ghosh fails to demonstrate the requisite element of causation because he has not shown that the disciplinary charges were actually false or that, but for retaliatory animus, the disciplinary charges would not have been filed.  According to the Offense Report, Ghosh obtained permission to leave his dorm to attend the law library on September 16, 2005.  (Doc. # 45, *Summary Judgment Motion*, Exhibit B - Disciplinary

Report & Records).  After the offenders who were scheduled to use the law library arrived on the day in question, Pendergraff noticed that Ghosh was not among them.  (*Id.*).  Because Ghosh's location was unaccounted for, an investigation ensued.  (*Id.*).  Pendergraff found Ghosh in the showers, where he had no authorization to be.  (*Id.*).  Officer Wade and Officer Larson reportedly witnessed Ghosh "out of place" without authorization.  (*Id.*).  Accordingly, disciplinary charges issued against Ghosh in case #20060022948.  (*Id.*).

Ghosh was convicted of the disciplinary charges in case #20060022948, following a hearing.  (*Id.*).  He was reprimanded and sanctioned with the loss of commissary and recreational privileges for ten days.  (*Id.*).  Ghosh does not dispute the facts outlined in the Offense Report, which formed the basis of the disciplinary charge against him.  Because he was convicted of the charges, Ghosh does not show that disciplinary case against him was false; nor does he show that, but for any retaliatory motive on Pendergraff's part, the disciplinary charges were unwarranted under the circumstances.  Ghosh therefore fails to show that the disciplinary charges were filed in retaliation and not because Ghosh was violating prison rules.  Thus, Ghosh raise a genuine issue of material fact on whether the requisite causation existed or that, but for retaliatory animus on Pendergraff's part, he would not have been convicted of a disciplinary offense.

In conclusion, Ghosh does not demonstrate that the charges were filed as the result of retaliatory intent on Pendergraff's part.  Likewise, Ghosh does not show that he was convicted of a false disciplinary case or that, but for the charges filed by Pendergraff, he would not have been convicted of the disciplinary offense.  In addition, because the sanction

was minimal, Ghosh does not demonstrate that he suffered a more-than-*de minimis* adverse action as the result of the disciplinary conviction in case #20060022948.   Under these circumstances, Ghosh has failed to demonstrate or otherwise raise a genuine issue of material fact on the elements of retaliatory intent or causation.[8]  Therefore, Pendergraff is entitled to summary judgment on the retaliation claim against him.

### E.    Qualified Immunity

Alternatively, Hubbard and Pendergraff move for summary judgment on the issue of qualified immunity.  Public officials acting within the scope of their authority are shielded from civil liability by the doctrine of qualified immunity if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Even if a defendant's actions have violated a constitutional right, qualified immunity is nonetheless appropriate if "the defendant's actions were 'objectively reasonable' with reference to 'clearly established law'

---

[8]     Moreover, although the defendants do not raise this issue, the Court questions whether Ghosh could establish that he suffered the requisite adverse action as the result of any retaliation in connection with case #20060022948.  The only punishment imposed in that case was a loss of commissary and recreational privileges for ten days.  This type of sanction is not viewed as an "atypical and significant hardship" of the sort protected by the Due Process Clause. *Sandin*, 515 U.S. at 484; *Madison*, 104 F.3d at 768.  The sanction did not entail an extended restriction to the plaintiff's cell or anything comparable to a transfer to administrative segregation.  *See Hart*, 343 F.3d at 764 (finding that an extended loss of commissary privileges and a sanction in the form of a twenty-seven day cell restriction, like a transfer to administrative segregation, did not qualify as *de minimis*) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)).  Thus, under the circumstances present in this case, the Court is not persuaded that the ten-day restriction imposed upon Ghosh's commissary and recreational privileges is of the magnitude that it would deter an ordinary person from further exercise of his rights.  *See Morris*, 449 F.3d at 686.  For this additional reason, the Court would find that Ghosh fails to establish that he suffered the requisite adverse act in connection with disciplinary case #20060022948.

at the time of the conduct in question." *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th

Cir. 2004) (quoting *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998)).

Officials sued in their individual capacities are protected by qualified immunity unless

the alleged act violates a constitutional right that was clearly established at the time. *Sanchez*

*v. Swyden*, 139 F.3d 464, 466-67 (5th Cir. 1998). "The doctrine of qualified immunity serves

to shield a government official from civil liability for damages based upon the performance

of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279

F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.,* 245 F.3d 447, 456 (5th

Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the

plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,*

475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See,*

*e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004). The first step has two parts:

First, the Court must decide whether the plaintiff alleged a constitutional violation, and that

the violation is of a clearly established constitutional right. *Id.*; *Saucier v. Katz*, 533 U.S.

194, 201 (2001). To be "clearly established" for purposes of qualified immunity, "[t]he

contours of the right must be sufficiently clear that a reasonable official would understand

that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

If the defendants' actions violated a clearly established constitutional right, the final step of

the analysis asks whether qualified immunity is appropriate, nevertheless, because the

defendants' "actions were objectively reasonable" in light of "law which was clearly

established at the time of the disputed action." *Collins,* 382 F.3d at 537.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

In the summary judgment context, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity enquiry overlaps substantially with the defendants' contention that the plaintiff's retaliation claims against them lacks merit. As noted above, Ghosh has failed to demonstrate a retaliation claim of constitutional dimension against Hubbard or Pendergraff. It is well established that if the defendant's conduct did not violate a constitutional right, then the defendant is entitled to qualified immunity and it is unnecessary to consider whether the asserted right was "clearly established." *Chavez v. Martinez*, 538 U.S. 760, 766 (2003); *see also Martinez v. Texas Dep't of Crim. Justice*, 300 F.3d 567, 577 (5th Cir. 2002) (finding that, because plaintiff's First Amendment retaliation claim failed, the defendants were entitled to qualified immunity because plaintiff failed to establish a constitutional violation under the first prong of the qualified immunity analysis). Because Ghosh has failed to raise a genuine issue of material

fact on whether Hubbard or Pendergraff committed a constitutional violation, the defendants are entitled to summary judgment on the first prong of the qualified immunity analysis.

Moreover, the record of the disputed disciplinary cases, which is outlined above in connection with Ghosh's retaliation claims against Hubbard and Pendergraff, does not show that the defendants' actions were objectively unreasonable under the circumstances presented. Where qualified immunity is asserted, the plaintiff has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. Ghosh, who has filed a response to the summary judgment motion, merely alleges in conclusory fashion that the defendants' conduct was wrong because the disciplinary cases filed against him were false. (Doc # 48, *Plaintiff's Legal Memorandum*, at 4). As discussed above, however, Ghosh has not shown that the disciplinary charges were actually false when they were lodged, and he does not provide specific facts or point with particularity to evidence that would tend to disprove the asserted reasonableness of the defendants' actions under the circumstances. Thus, Ghosh falls short of meeting his summary judgment burden. Because Ghosh has not demonstrated that a genuine issue of material fact remains with respect to the objective reasonableness of the defendants' conduct, Hubbard and Pendergraff are entitled to summary judgment on the second prong of the qualified immunity analysis as well.

**F.     Plaintiff's Discovery Motions**

Ghosh has filed a motion to compel copies of his disciplinary hearing records, a motion for an extension of time to conduct additional discovery, and a request for production of documents. (Doc. # 44, # 46, # 49). Ghosh requests discovery of a wide variety of items. The Court construes this series of discovery requests under Rule 56(f) of the Federal Rules of Civil Procedure, which governs motions for a continuance to conduct discovery while a summary judgment motion is pending.

Motions for a continuance under Rule 56(f) are "generally favored, and should be liberally granted." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992)). To justify a continuance, however, the Rule 56(f) motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact. *See Stearns Airport Equip.*, 170 F.3d at 534-35 (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)). In that regard, the movant "must be able to demonstrate how postponement and additional discovery will allow him to defeat summary judgment; it is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.'" *Stearns Airport Equip.*, 170 F.3d at 535 (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citation omitted)).

Ghosh has filed three separate motions related to discovery. The motion to compel discovery by Ghosh seeks copies of the disciplinary hearing tape in case #20050270755 and related documents. (Doc. # 44). The motion for an extension of time complains that the

defendants have "stonewalled" his request for production of the disciplinary hearing tape and related records.  (Doc. # 46).  In a recent submission labeled, "Plaintiff's Initial Disclosures," Ghosh inserts a request for production of documents under Rule 34 of the Federal Rules of Civil Procedure, including: (1) all documents that evidence, mention, or refer to plaintiff's disciplinary hearing in case #20050270755; (2) a copy of the Offender Grievance Operations Manual; (3) a copy of TDCJ Policy PD-22, which concerns falsification of records; (4) all documents that evidence, mention or refer to any of the defendants, including complaints, lawsuits, NCIC reports, criminal complaints, and grievances both from TDCJ administration, offenders, or ombudsman records; (5) a copy of the Luther Unit employee roster from January of 2004 through April of 2006; (6) a photograph of the "extortion poster" posted in the TDCJ hallway of the Hughes Unit; (7) a copy of the TDCJ Disciplinary Rules and Procedures manual for offenders and employees; (8) copies of all investigative documents that evidence, mention, or refer to plaintiff's Ombudsman complaint (#5-4479-01) against Warden McClure; (9) all documents that evidence, mention, or refer to TDCJ disciplinary case #20060022948.  (Doc. # 49).

Defendants Hubbard and Pendergraff have provided an initial disclosure to the plaintiff in this case.  (Doc. # 36).  Also, the motion for summary judgment submitted by these defendants includes documents related to disciplinary case #20050270755 and case #20060022948, along with records of the supporting investigations.  (Doc. # 45).  Ghosh has tendered a wide variety of documents in this case as well, showing that he has had access to information in an effort to support his claims.  Ghosh submitted numerous exhibits in support

of his original complaint and he has supplemented the record with additional exhibits. (Docs. # 1, # 28, # 29).  In addition to these records, Ghosh has filed a fairly comprehensive response to the defendants' motion for summary judgment and he has also included documents in support of his arguments.[9] (Docs. # 47, # 48).  Ghosh, who presents only conclusory assertions in support of his claim that additional discovery is needed, does not provide any information or argument about how the requested discovery will raise a genuine issue of material fact.  Because Ghosh has not established how the information he seeks will create a genuine issue of material fact, his discovery motions will be denied.

## IV.    CONCLUSION AND ORDER

Accordingly, based on the foregoing, the Court **ORDERS** as follows:

1.    The joint motion for summary judgment by defendants Reneda Hubbard and William Pendergraff (Doc. # 45) is **GRANTED** and the claims against these defendants are **DISMISSED** with prejudice.

2.    The plaintiff's claims against Warden Norman McClure, Captain Kevin Mayfield, Paula Spriggs, Counsel Substitute Joseph Weaver, and the retaliation claim against Major Leonard Ellis, are **DISMISSED** for failure to exhaust administrative remedies.

3.    The plaintiff's remaining claims against Major Ellis and the claims against Captain Brian Smith are **DISMISSED** with prejudice for failure to state a

---

[9]    The response filed by Ghosh indicates that he has had access to many of the documents requested, such as TDCJ PD-22.  (Doc. # 48, *Plaintiff's Legal Memorandum* at 4, reciting from that policy).

claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B).

4.      The plaintiff's discovery motions (Docs. # 44, # 46, # 49) are **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>January 31</u>, 2007.


_____
Nancy F. Atlas
United States District Judge